

# HELEN F. DALTON & ASSOCIATES, P.C.
## ATTORNEYS AT LAW

---

80-02 Kew Gardens Road, Suite 601, Kew Gardens, NY 11415

Tel. (718) 263-9591 Fax. (718) 263-9598

September 26, 2024

**Via ECF**
The Honorable Sarah L. Cave, U.S.M.J.
United States District Court
Southern District of New York
500 Pearl Street, Room 1330
New York, NY 10007

        Re:    **Zamora et al v. JGL Restaurant Corp. et al.**
                  **Civil Docket No.: 1:22-cv-05739- SLC**

Dear Judge Cave:

      Our office represents Bernardo Castillo Zamora ("Zamora"), Jose Edwin Mendez ("Mendez") and Javier Diaz Plaza ("Plaza"), (hereinafter, Plaintiffs") in the above-referenced matters and we submit this motion jointly with counsel for JGL Restaurant Corp. d/b/a Italian Village Pizza, and Jose Leon, as an individual (collectively, the "Defendants") seeking approval of the Settlement Agreement (attached hereto as **Exhibit 1**) ("the Agreement") as fair and reasonable. The terms of the Agreement were reached with the assistance of the Court at a Settlement Conference on August 8, 2024.

      The parties submit that the terms of the Agreement comport with *Cheeks v. Freeport Pancake House*, 796 F.3d 199 (2d. Cir. 2015) and provide analysis using the factors articulated in *Wolinsky v. Scholastic, Inc., 900 F. Supp. 2d 332, 335-336* as a basis for why the Court should approve the Agreement. Separately, Plaintiffs' counsel addresses their request for attorneys' fees and their fee arrangement with Plaintiffs.

    **I.**    **The Wolinsky Factors**

      The parties analyze the fairness and reasonableness of the Agreement utilizing the factors articulated in *Wolinsky*:

**1. The Plaintiffs' range of possible recovery:**

    **a. Plaintiffs' Position**

      Plaintiffs were employed by Defendants at JGL Restaurant Corp. d/b/a Italian Village Pizza, located at 1494 1st Avenue, New York, NY 10075, during various times described below.

Plaintiffs commenced this action on July 6, 2022 to recover damages resulting from alleged failures to pay the Plaintiffs' overtime wages, appropriate minimum wages and spread of hours compensation, in violation of the Fair Labor Standards Act ("FLSA") and the New York Labor Laws and state regulations ("NYLL"). Plaintiffs also sought recovery for damages for statutory penalties resulting for WTPA violations under the NYLL for failure to provide the Plaintiffs with written wage notices, in English and in Spanish (Plaintiffs' primary language) of Plaintiffs' regular and overtime rates of pay, regular pay day, and such other information as required by NYLL §195(1), and failure to provide Plaintiffs with wage statements upon each payment of wages, as required by NYLL §195(3).

### Plaintiff Bernardo Castillo Zamora

Plaintiff Zamora alleged that he was employed by Defendants at Italian Village from in or around November 2019 until in or around November 2020, with primary job duties and tasks as a food preparer, delivery person and cleaner, while performing related miscellaneous duties and tasks for the Defendants, at the instructions and orders of the individual Defendants.

Plaintiff Zamora alleged that he regularly worked six (6) days per week during his employment with the Defendants. Plaintiff Zamora alleged that he regularly worked a schedule of shift beginning at 11:00 a.m. each workday and regularly ended at approximately 10:00 p.m. to 11:00 p.m., or later, six (6) days per week from in or around November 2019 until in or around November 2020. Thus, Plaintiff was regularly required to work sixty-six (66) hours to seventy-two (72) hours, or more hours each week, from in or around November 2019 until in or around November 2020.

Plaintiff Zamora alleged that Defendants paid him a flat daily rate of approximately $70.00 per day for all hours worked from in or around November 2019 until in or around November 2020.

### Plaintiff Jose Edwin Mendez

Plaintiff Mendez alleged that he was employed by Defendants at Italian Village from in or around November 2019 until in or around March 2020, with primary job duties and tasks as a delivery person and food preparer, while performing related miscellaneous duties and tasks for the Defendants, at the instructions and orders of the individual Defendants.

Plaintiff Mendez alleged that he regularly worked six (6) days per week during his employment with the Defendants. Plaintiff Mendez alleged that he regularly worked a schedule of shift beginning at 2:00 p.m. each workday, and Plaintiff regularly ended at approximately 12:30 a.m., or later, six (6) days per week from in or around November 2019 until in or around March 2020. Thus, Plaintiff was regularly required to work sixty-three (63) hours or more hours each week from in or around November 2019 until in or around March 2020.

Plaintiff Mendez alleged that Defendants paid him a flat weekly rate of approximately $500.00 per week for all hours worked from in or around November 2019 until in or around March 2020.

### Plaintiff Javier Diaz Plaza

Plaintiff Plaza alleged that he was employed by Defendants at Italian Village from in or around November 2019 until in or around February 2020, with primary job duties and tasks as a delivery person, food preparer, cleaner and stocker, while performing related miscellaneous duties and tasks for the Defendants, at the instructions and orders of the individual Defendants.

Plaintiff Plaza alleged that he regularly worked six (6) days per week during his employment with the Defendants. Plaintiff Plaza alleged that he regularly worked a schedule of shift beginning at

11:00 a.m. each workday, and Plaintiff regularly ended at approximately 11:00 p.m., or later, six (6) days per week, from in or around November 2019 until in or around February 2020. Thus, Plaintiff was regularly required to work seventy-two (72) hours or more hours each week from in or around November 2019 until in or around February 2020.

Plaintiff alleged that he was paid a flat daily rate of approximately $70.00 per day for all hours worked from in or around November 2019 until in or around February 2020.

If Plaintiffs were 100% successful on all of their underlying claims, including establishing that they worked at least 63 to 72 hours every single week during their employment and further established that they were never compensated for any of their overtime at the rate of time-and-a-half, appropriate minimum wage and spread of hours, Plaintiffs' potential wage recovery could have been approximately $70,000.00, in addition to any other monetary relief Plaintiffs may have been entitled to under state and federal laws.

However, Plaintiffs acknowledged that there were some records provided by Defendants as well factual disputes over the number of hours that Plaintiffs worked each week and the amounts paid to Plaintiffs and legal disputes over how to calculate the potential overtime owed to them. As such, Plaintiffs' position is that the settlement amount falls within the reasonable expected range of recovery.

b. The Settlement Amount is Fair and Reasonable

FLSA claims may only be settled and dismissed with prejudice under Rule 41 if they are approved by the Court. *Cheeks v. Freeport Pancake House, Inc.,* 796 F.3d 199, 206-207 (2d Cir. 2015). "Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." *Kochilas v. Nat'l Merch. Servs., Inc.*, 2015 WL 5821631, at *7 (E.D.N.Y. Oct. 2, 2015) (citation omitted). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of settlement." *Id.* (citation omitted). Furthermore, "[i]f the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved." *Id.* (citations omitted). "Generally, there is a strong presumption in favor of finding a settlement fair, as the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Lliguichuzhca v. Cinema 60, LLC,* 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) (citation and internal quotation marks omitted).

The parties have agreed to settle all claims asserted in this matter against Defendants for $68,500.00. The parties believe that this amount is reasonable considering Plaintiffs' claims and the defenses and records maintained by Defendants in this matter. Moreover, the settlement amount was only achieved after accepting a settlement proposal issued by the Court and negotiation between experienced counsel. The parties had genuine, bona fide disputes over the hours worked by Plaintiffs, the pay received by Plaintiffs, and the counterclaims, but both sides negotiated in good faith to resolve these disputes with a fair and reasonable settlement amount.

Moreover, the settlement amount falls squarely in the realistic, possible range of settlement and allow Plaintiffs to recover a substantial sum of their alleged unpaid wages – a figure strongly contested by Defendants – and takes into account both the risks of continued litigation, prevailing at trial, obtaining a judgment at trial, whether Plaintiffs would be liable to Defendants for significant damages, and whether Plaintiffs would be able to collect on any such judgment post-trial.

2. **The extent to which "the settlement will enable the parties to avoid anticipated burdens and expenses in establishing respective claims and defenses":**

    The settlement still enables the parties to avoid the anticipated burdens and expenses of continued discovery and a trial. Had the parties not reached a settlement, both sides faced significant time and expenses dedicated to conducting further depositions and an undetermined number of non-party depositions. Lastly, the parties also anticipated significant time and expenses dedicated to conducting a trial that may have lasted at least three days.

    Plaintiffs would have incurred expenses preparing exhibits and a hiring court-licensed translator for trial in addition to conducting the trial. Defendants would have also been required to dedicate significant time and money toward a trial which would have served as a distraction to operating their business. The settlement gives both parties peace of mind that they will not incur additional expenses and face an uncertain outcome at trial.

3. **The seriousness of litigation risks faced by the parties:**

    Both parties faced significant risks had they proceeded to trial in this matter.

    Although Plaintiffs were confident that they could succeed on all their claims, Plaintiffs recognized the attendant risks of not prevailing at trial and not receiving any recovery. Plaintiffs also could have recovered less than agreed-upon settlement at trial. Moreover, Plaintiffs could have obtained a judgment against Defendants at trial on which he could not collect at a much later date in the future. The seriousness of this risk favored a guaranteed payment through a Court-approved settlement for Plaintiffs.

    Defendants also faced the risk of losing at trial and not only having to pay any potential unpaid wages, liquidated damages and penalties to Plaintiffs but also Plaintiffs' counsel's reasonable attorneys' fees incurred through trial.

4. **Whether "the settlement agreement is the product of arm's-length bargaining between experienced counsel":**

    The parties first attended a Court-annexed mediation that helped narrow the issues and range of settlement. The parties later achieved a settlement at a Settlement Conference before the Court on August 8, 2024.

    Plaintiffs are represented by counsel who specialize in FLSA and NYLL matters and have settled hundreds of wage-and-hour cases in both New York state and federal courts. Defendants are also represented by counsel who specialize in FLSA and NYLL matters.

    Further, the terms of the Settlement Agreement were the product of continued arm's-length bargaining between experienced counsel and has been carefully tailored to satisfy the criteria articulated for approval by Second Circuit courts.

5. **The possibility of fraud of collusion:**

    Both parties are represented by experienced, competent counsel and the parties have maintained a professional relationship throughout the litigation. Prior to litigating this matter, counsels were unfamiliar with each other. There is no possibility of fraud or collusion in this settlement.

## II. Requested Attorneys' Fees and Distribution to Plaintiff

The parties agreed to a global settlement of $68,500.00. If the Agreement is approved by the Court, Plaintiffs will recover $45,174.00 after requested attorneys' fees and reimbursement of expenses.

Plaintiff's counsel respectfully requests $739.00 for identifiable expenses, which include:
- the Southern District of New York filing fee in this matter: $402.00
- the costs of service of the Summons and Complaint on all Defendants: $337.00

Plaintiffs' counsel respectfully requests one-third of the settlement less their expenses ($67,761.00), or $22,587.00 in attorneys' fees, as agreed upon in the Plaintiffs' retainer agreement with this firm. Therefore, if this request is approved, the total amount to be paid to the attorneys for their fees and expenses in this matter is $23,236.00.

The settlement as broken down into its component parts is as follows:

**Settlement Amount:** $68,500.00
**Attorneys' Expenses:** $739.00
**Net Settlement Amount:** $67,761.00 ($68,500.00 - $739.00)
**Requested Attorneys' Fees:** $22,587.00 ($67,761.00 / 3)
**Total payable to Attorneys:** $23,236.00 ($22,587.00 + $739.00)
**Total payable to Plaintiff:** $45,174.00 ($68,500.00 - $23,236.00)

Plaintiffs' attorneys and their client have a retainer agreement that is reduced to writing and is signed by the client. Attorneys' fees of 33% on FLSA and NYLL claims are routinely approved by courts in the Second Circuit. *See, e.g., Calle v. Elite Specialty Coatings Plus, Inc.,* 2014 U.S. Dist. LEXIS 164069 (E.D.N.Y. Nov. 19, 2014) (approving settlement of FLSA and NYLL claims stating that a "one-third contingency fee is a commonly accepted fee in this Circuit"); *Rangel v. 639 Grand St. Meat & Produce Corp.,* 2013 U.S. Dist. LEXIS 134207 (E.D.N.Y. Sept. 19, 2013). Courts in this District typically approve a fee of one-third or less of the settlement amount. *See Santos v. Yellowstone Props, Inc*., 2016 WL 2757427 at *4 (S.D.N.Y. May 10, 2016).

This request for attorneys' fees is supported by the work performed by Plaintiffs' counsel throughout the litigation of both matters and the recovery secured through their efforts. Plaintiffs' counsel's billing records and qualifications are attached hereto as **Exhibit 2** and invoices for requested costs are attached hereto as **Exhibit 3**.

Plaintiffs' counsel has advocated for their clients throughout the litigation and believe that the settlement amount secured is a product of their efforts. Furthermore, the fee requested is reasonable in relation to the recovery received by Plaintiffs and the fee arrangement of one-third of the net settlement amount is regularly approved by courts in the Second Circuit.

**III.     Closing**

In closing, the parties believe that the settlement amount and the terms of the Agreement are fair and reasonable. The settlement was the product of negotiation between experienced counsel and the terms of the Settlement Agreement comport with Second Circuit case law. As such, we respectfully request that the Court approve the Settlement Agreement. We thank the Court for its consideration and remain available to provide any additional information.

Respectfully submitted,

/s/

_____

James O'Donnell, Esq.